UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **SHABBAR RAFIQ**<br>    **REG. # 54757-177** | : | **DOCKET NO. 18-cv-00495** |
| **VERSUS** | : | **JUDGE JAMES D. CAIN, JR.** |
| **USA, ET AL** | : | **MAGISTRATE JUDGE KAY** |

## REPORT AND RECOMMENDATION

Before the court is a Motion for Summary Judgment [doc. 130] filed by defendants in this civil rights action brought by pro se plaintiff Shabbar Rafiq, an inmate in the custody of the Federal Bureau of Prisons, currently incarcerated at F C I – Allenwood Low in White Dear, Pennsylvania, but whose claims arises out of constitutional violations that allegedly occurred while he was assigned to FCI-Oakdale (FCIO). Following the filing of an opposition to the defendants' motion (doc. 136), a reply to plaintiff's opposition was filed by the defendants (doc. 142), and subsequently a response to the reply (doc. 143). The matter is now ripe for review.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this court. For the reasons stated below, **IT IS RECOMMENDED** that the Motion for Summary Judgment [doc. 130] be **GRANTED** and that the action be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies.

## I.
### BACKGROUND

Rafiq originally filed this suit pursuant *Bivens v. Six Unknown Named Agents*, 91 S.Ct. 1999 (1971), on April 11, 2018, and since that date, he has filed numerous amended complaints.

Docs. 1, 5, 9, 22, 23, 44, 62, 75. The individual defendants are retired warden Rodney Myers, Health Services Administrator Heather Howard, and Special Investigative Services Technician Kent Byrd.

Plaintiff's first claim against retired FCIO warden Rodney Myers is a violation of his civil rights due to prison policies implemented by Myers that prevented him from practicing his Muslim faith while he was incarcerated at FCIO. Specifically, his amended complaint states that although his religion requires him to pray five times per day with other Muslim inmates, a corrections officer denied his request to pray with other Muslims. Doc. 23, ¶ 6(i). He further asserts that he was denied regular access to an imam, and that he was also denied religious classes and a ceremonial meal. *Id.* at ¶¶ 6(iii), 7(i-ii).

Additionally, Plaintiff maintains that, because of Myers abdicating his responsibilities, he was exposed to secondhand smoke when prison staff smoked cigarettes outside of designated smoking areas *Id.* ¶ 8(i). He alleges that the exposure exacerbated his preexisting heart issues. *Id.*

Next, the complaint contends that unsanitary housing units were infested with insects, and that Plaintiff was not provided with adequate cleaning supplies to clean his cell. *Id.* ¶ 8(ii). Plaintiff further alleges the circuit breakers in the housing units routinely tripped causing dark conditions in his cell. *Id.* ¶ 8(iii). Plaintiff's position appears to be that these alleged living conditions violate his Eighth Amendment Rights because they constitute evidence of disregard for his health and safety. *Id.* ¶ 8(iv).

Plaintiff's claims against Defendants Byrd and Howard arise from allegations that Plaintiff was injured when assaulted by another inmate, and that he was not provided adequate medical care following the physical altercation with the fellow inmate. In his second amended complaint,

Plaintiff maintains that Defendant Byrd, a Special Investigative Services (SIS) staff member, informed Plaintiff of the impeding assault. Doc. 44, ¶ 4; doc. 51 ¶ 2. Plaintiff alleges that medical staff acted with deliberate indifference by denying him medical treatment for injuries he sustained during the fight with the inmate. Doc. 44, ¶ 6; doc. 51 ¶ 2.

In its motion, the defendants aver that all Plaintiff's claims should be dismissed due to Plaintiff's failure to exhaust administrative remedies, or in the alternative, due to Plaintiff's inability to meet his burden of proof under *Bivens* with respect to his allegations against each named defendant. Alternatively, Defendants assert that they are entitled to qualified immunity, and are therefore immune from Plaintiff's suit.

## II.
### LAW AND ANALYSIS

#### A. *Summary Judgment Standard*

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2511 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*,

896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 106 S.Ct. at 2511 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 120 S.Ct. 2097, 2110 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). "A motion for summary judgment cannot be granted simply because there is no opposition, even if failure to oppose violated a local rule. The movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the court may not grant the motion, regardless of whether any response was filed." *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n. 3 (5th Cir. 1995) (quoting *Hibernial Nat. Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985)).

### B. *Application of Summary Judgment Standard and Exhaustion Requirements*

The Federal Bureau of Prisons has a four-step process for resolving complaints by prisoners. See 28 C.F.R. § 542.10 et seq. Initially, a prisoner must informally attempt to resolve the complaint with staff. 28 C.F.R. § 542.13(a). If informal attempts are unsuccessful, the prisoner must submit a Request for Administrative Remedy to the Warden. 28 C.F.R. §542.14. If the prisoner is not satisfied with the warden's response, he may appeal to the Regional Director. 28 C.F.R. § 542.15. If still unsatisfied, the prisoner may appeal to the Office of General Counsel. *Id*. The Prison Litigation Reform Act (PLRA) requires exhaustion of the available remedies. See 42 U.S.C. §1997(e) (a); *see also Booth v. Churner*, 121 S.Ct. 1819 (2001), *Porter v. Nussle*, 122 S.Ct.

983 (2002), and *Clifford v. Gibbs*, 298 F.3d 328, 331-332 (5th Cir. 2002) (holding that the Prison Litigation Reform Act's exhaustion requirement is mandatory, not discretionary, and the prisoner must exhaust). Inmates are required to exhaust administrative remedies irrespective of the forms of relief sought and offered through administrative sources. *Booth*, 121 S.Ct. at 1824, n. 6. This exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes. *Porter*, 122 S.Ct. at 992. The Supreme Court has held that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 127 S.Ct. 910, 918 (2007). Because Rafiq's *Bivens* action relates to prison conditions and was brought while he was a prisoner confined in a correctional facility, he was required to exhaust available administrative remedies before filing suit.

Under the PLRA, "proper exhaustion" means that the prisoner is required to "compl[y] with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 126 S.Ct. 2378, 2386 (2005). The Fifth Circuit takes a strict approach to exhaustion requirement "not just [to] substantially comply with the prison's grievance procedures but... [to] 'exhaust available remedies properly.'" *Wilson v. Epps*, 776 F.3d 296, 299–300 (5th Cir. 2015) (quoting *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010)), *see also Gonzalez v. Seal*, 702 F.3d 785, 787 (5th Cir. 2012) (explaining that pre-filing exhaustion is both mandatory and non-discretionary). "[A] grievance should give prison officials fair notice of the problem that will form the basis of the prisoner's suit." *Johnson v. Johnson*, 385 F.3d 503, 516 (5th Cir. 2004); *see also Moussazadeh v. Tex. Dept. Crim. Justice,* 703 F.3d 781, 788 (5th Cir. 2012) ("We typically use a standard according to which a grievance should give prison officials fair notice of the

problem that will form the basis of the prisoner's suit."). "Exceptions to the exhaustion requirement are appropriate where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action." *Schipke v. Van Buren*, 239 F. App'x 85 at 86 (5th Cir. Aug. 30, 2007) (quoting *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994)). "Exceptions to the exhaustion requirement apply only in 'extraordinary circumstances,' and [a Plaintiff] bears the burden of demonstrating the futility of administrative review.'" *Id*.

### 1. *Plaintiff's Claims Against Defendant Myers*

On September 8, 2017, Plaintiff filed an Informal Resolution, BP-8, in accordance with 28 C.F.R. § 542.13. Doc. 130, att. 3, p. 13. The subject of the informal resolution attempt was Plaintiff's request to be transferred away from FCC Oakdale to a BOP institution in either Seagoville or Fort Worth, Texas for a "plethora of reasons including but not limited to attorney visitation and correspondence, familiar situation, insufficient and inadequate facility, lack of rehabilitation programs and etc (medical)." *Id*. At the bottom of the request for administrative remedy, plaintiff specifies: "Subject of Complaint: <u>Transfer</u>." *Id*. This request for administrative remedy provides the assigned unit manager no notice of Plaintiff's allegations that his Eighth Amendment Rights were violated, and likewise no indication to investigate Defendant Myers' supposed violation of Plaintiff's rights.

Plaintiff then filed an Administrative Remedy Request, BP-9, which was submitted on October 5, 2017, accepted on October 11, 2017, and received by the Warden's office on October 23, 2017. Doc. 1, att. 2, p. 3. He again requests a "transfer for a plethora of reasons," but added generalized claims of exposure to secondhand smoke, mental health issues due to noise of gun range, irregular and arbitrary enforcement of BOP policy and procedures, lack of programs and

procedures, inadequate law library to his list of reasons and inadequate religious services." *Id* Warden Calvin Johnson's response stated, "This is a response to your Request for Administrative remedy received on October 23, 2017, in which you request a nearer release transfer. You specifically request a transfer to Federal Correctional Institution Seagoville, Texas, or Federal Medical Center, Fort Worth, Texas." Doc. 130, att. 3, p. 17. Relying on the fact that the Designation and Sentence Computation Center designated him to an Immigration Hearing Program site, FICO, due to his Pakistani Citizenship and the fact that he is deportable after serving his sentence, his request to transfer was again denied. *Id*. The BP-9 does not put Defendant Myers on notice of the claims against him.

Plaintiff's Regional Administrative Remedy Appeal, BP-10, was received by the Regional Director on November 6, 2017. Doc. 1, att. 2, p. 5. Relevant to the present matter, Plaintiff includes one sentence that "smoking by staff is not curtailed to 'designated' smoking areas but everywhere, exposing me to documented dangers of secondhand smoke." *Id*. at p. 6. He also complains of "inhabitable living conditions," including days without electricity due to circuit issues, inability to take regular showers and unclean utensils and trays. *Id*. He expands slightly on the allegation that he is "restricted and prohibited from lawful exercise of [his] religion," specifying that "the chapel is mostly closed and there is no chaplain available." *Id*. Plaintiff closes his BP-10 challenging the reasons for denying his transfer and advising the BOP that his "family is from Dallas, TX and having 2 special needs children; it's impossible for them to visit me this far." *Id*. Accordingly, he again asks to be transferred to Seagoville or Fort Worth "before the holidays." *Id*. In a second BP-10, Plaintiff complains of sexual misconduct and retaliation and numerous other constitutional rights violations. He closes with the following, "Please be advised that my family is from Dallas, TX and having 2 special needs children; it's impossible for them to

visit me this far. For the foregoing reasons, I sincerely hope you can transfer me to FCI Seagoville-Fort Worth before the holidays and further need of administrative remedy." *Id*. at p. 21. Neither of these appeals mentions Myers. The Regional Director denied his request for a transfer and instructed, regarding the "numerous other allegations not regarding your request for transfer… [t]hose must be addressed in separated Administrative Remedy requests at the local level." *Id*. at p. 22.

Finally, Plaintiff filed his Central Office Administrative Appeal, BP-11, on January 8, 2018, stating "This appeal is to <u>request an immediate transfer</u> and apprise the Bureau of Prisons of actions within its institutions." Doc. 1, att. 2, p. 8 (emphasis added). The Bureau of Prisons' Office of General Counsel received the appeal on January 19, 2018. *See id*. at p. 24. The Office of General Counsel rejected the remedy due to Plaintiff's to provide a copy of the BP-10 and the Regional Director's response to the BP-10. *See id*.; *see also id*. at p. 34. Plaintiff was instructed to resubmit the appeal within 15 days of the rejection notice. *Id*. at p. 35. Plaintiff did not resubmit his BP-11, as he contends that he never received the response to his BP-11. Doc. 136, p. 3. While the defendants provide a document evidencing that the appeal was denied and giving reasons for same, no proof that the response was delivered to plaintiff or ever received by FCIO was provided by defendants. However, whether the response was received or not is of no moment as Plaintiff's filings are inadequate to prove exhaustion of the claims against defendants.

Noting Rafiq's arguments to the contrary, the Court finds that he was seeking a transfer to another facility through his appeals through the administrative remedy process. He repeatedly asked for a transfer and even stated in his BP-11 was an appeal to "request an immediate transfer." Doc. 1, att. 2, p. 8. Defendant Myers is not mentioned by name in any of Plaintiff's filings, and as such, was not put on notice. Moreover, the claims against him were not included in each of his

administrative remedy filings. Accordingly, Rafiq has failed to exhaust his claims against Defendant Myers.

### 2. *Claims against Defendants Howard and Byrd*

Defendants argue, and the Court agrees, that Plaintiff does not certify that he exhausted administrative remedies for his claims against Defendants Byrd and Howard because he did not exhaust administrative remedies for his claims against either of these defendants either. Plaintiff did not file any administrative remedies based on his claims regarding his alleged assault by inmate Bushay, or his claims related to medical treatment he received subsequent to the altercation. *See* doc. 130, att. 3, pp. 4-11.

### IV.
#### CONCLUSION

The PLRA and Fifth Circuit require a *Bivens* Plaintiff to properly exhaust administrative remedies before filing suit. The administrative remedies analyzed herein are insufficient to constitute exhaustion under the PLRA, Supreme Court, and Fifth Circuit precedent. For the foregoing reasons, **IT IS RECOMMENDED** that the Motion for Summary Judgment (doc. 130) be **GRANTED** and that Rafiq's claims be **DISMISSED WITHOUT PREJUDICE** due to lack of exhaustion.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon

grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

THUS DONE AND SIGNED in Chambers this 4th day of October, 2022.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE